THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
*v.* EUGENE E. MCMANUS, Defendant.

Court of General Sessions of the County of New York, April 30, 1946.

*John P. Sweeney* for defendant.

*Frank S. Hogan, District Attorney (Alexander Dreiband* of counsel), for plaintiff.

STREIT, J.   This is a motion for an order for an inspection of the Grand Jury minutes and for the dismissal of the indictment upon the grounds that it was obtained upon insufficient and incompetent evidence; that the indictment on the face thereof fails to state a criminal violation of section 135 and 137 of the Election Law, and upon the further ground that section 783 of the Penal Law is unconstitutional.

This defendant was indicted on March 13, 1946, " for failing to comply with sections 135 and 137 of the Election Law respecting the designation and nomination of candidates, in violation of sections 783 of the Penal Law, committed as follows:  The said defendant, on or about August 12, 1945, at the City of New York, in the County of New York, did unlawfully, knowingly and wilfully fail and neglect to comply with the provisions of sections 135 and 137 of the Election Law, in that the said defendant, on Sheet No. 183, Volume 3 of the Independent Nominating Petition of the American Veteran Party for various municipal offices to be elected on November 6, 1945, did falsely represent and make it appear that one John Aiken and divers other persons whose names appear thereon as signers, had duly

signed and affixed their names thereon in his presence, when in truth and in fact the said John Aiken and such other persons had not duly signed and affixed their names thereon in his presence.''

To my knowledge, this is the first occasion wherein the courts have been called upon to apply the penal provisions of section 783 to sections 135 and 137 of the Election Law.

Section 783 of the Penal Law, which I hold as a matter of law is constitutional and not violative of section 16 of article III of the Constitution of the State of New York, provides as follows: '' Any person who knowingly and wilfully violates any provision of chapter seventeen of the consolidated laws of this state, known as the election law, which violation is not specifically covered by any of the previous sections of this article [74], is guilty of a misdemeanor.''

Article 6 of the Election Law refers to the designation and nomination of candidates. Section 135 of the Election Law is entitled '' Form of designating petition.'' Section 137 of the Election Law is entitled '' Independent nominations.''

The form set forth in section 135 for the designation of party candidates, as well as the form set forth in section 137 for the designation of independent nominations and the rules enumerated in section 137, are no doubt addressed to the general electorate and such persons who are interested in the designation and nomination of their candidates.

The first paragraph of section 135 sets forth a series of rules concerning designating petitions, and provides that they shall be numbered, that the residence, ward, election district, assembly district, town or city of the signer shall be set forth, as well as the date of the signing. The form of the petition is then given, following which is a form of acknowledgment and a space for the signature and official title of the officer authorized to take affidavits. Following that, and in the same section, is a proviso that '' The petition also may be authenticated as to all the signatures upon a separate sheet, by appending at the bottom of such sheet an affidavit of a witness, who is a duly qualified voter of the state, as to the subscription thereof * * *.'' Then follows the form of affidavit which is to be signed by the witness, which in substance provides: '' * * * (name of witness) being duly sworn, says: * * * I know each of the voters whose names are subscribed to the above sheet of the foregoing petition * * * and each of them subscribed the same in my presence and upon so subscribing declared to me that the foregoing statement, made and sub-

scribed by him or her, was true." Then below and to the right is a space for the signature of the witness and to the left is a space for the jurat and the signature and official title of the officer taking the acknowledgment.

The first paragraph of section 137 provides for the type of paper to be used, the numbering of pages, the manner in which the signers are to affix their names, the dates of signing, their residences, wards or election districts, and the town or city. Then follows the form of independent petition. Then there is set forth a provision that " The petition shall be verified by the signers, or authenticated by witness, in the manner provided in section one hundred and thirty-five, in respect of a designating petition." The succeeding two paragraphs set forth a series of rules with respect to emblems and the number of signatures of voters required.

An inspection of the Grand Jury minutes, together with the exhibit therein offered, discloses that five persons whose names are listed on sheet No. 183 of the American Veteran Party's Independent Nominating Petition and who appeared to have signed that sheet, testified that they did not sign the sheet. The testimony further discloses that the defendant affixed his name below the form of affidavit set forth on sheet No. 183 above the words " Signature of witness."

The sum and substance of the testimony before the Grand Jury is that this defendant, as subscribing witness, signed an untrue *but unsworn* statement to the effect that these five persons appeared before him and acknowledged to him that they signed the petition. There is no evidence before the Grand Jury and it is conceded by the District Attorney that there is no proof that the defendant swore to this statement or that he signed an " affidavit."

The question now before this court is: Is an untrue or false *but unsworn* statement by a subscribing witness that signers of a petition affixed their names in his presence, a violation of the Election Law within the meaning of section 783 of the Penal Law?

To determine that, we must ascertain whether the defendant violated any provision of the Election Law. I seek in vain for such provision.

Section 135 provides that an *affidavit* of a witness as to the subscription thereof is to be substantially as provided in the above form. If the witness signs the affidavit and swears to it before a person authorized to take oaths, and the matter contained in the affidavit turns out to be false, then in such a case

he may be guilty of either perjury in the first degree or perjury in the second degree.

Some of the requirements provided for in these forms are mandatory and a failure strictly to comply therewith is fatal to the petition and would nullify it. Thus, failure to insert the address of the witness (*Matter of Fales* v. *Meisser*, 264 App. Div. 949), failure to state when and where the witness was last registered (*Matter of Dorsey* v. *Cohen*, 156 Misc. 792) or failure of person signing a petition to verify his signature before a notary public (*Matter of Adams*, 21 Misc. 396) have been held to be mandatory requirements.

From the above cases it is apparent that the consequences for a failure, whether willful or inadvertent, to comply with the mandatory provisions as to the form or contents of designating or nominating petitions has been a voidance and a nullifying of the petition. That very circumstance, however, it seems to me, precludes the charge of crime here asserted. In this case there was an absence of proof that the subscribing witness had sworn to the petition. That would render that document a nullity. But the fact that the statement of the subscribing witness may be false, even willfully so, may not properly be used as a predicate for criminal prosecution under section 783 of the Penal Law.

There is a marked distinction between a failure to comply with the mandatory requirements as to the form of designating or nominating petition which will void the petition and a willful failure to do a particular act enjoined upon a person, or the willful commission of an act prohibited, which constitutes a crime.

The question before me now is not whether the petition is regular in form or defective, or whether the signatures should have been counted, but rather " whether he wilfully did an act expressly forbidden by law * * * which means an act required or an omission forbidden by statute." (*People* v. *Knapp*, 206 N. Y. 373, 380.)

The wrong done may have been the failure to obey the common law (3 Wharton on Criminal Law, § 2201; see, also, Clark and Marshall on Crimes [4th ed.], § 446; *Commonwealth* v. *Hoxey*, 16 Mass. 385; *Commonwealth* v. *Silsbee*, 9 Mass. 417; *Commonwealth* v. *McHale*, 97 Pa. 397), while the wrong charged here is the failure to obey some specific statute, and nowhere in the Penal Law or in the Election Law do I find any specific provision which the defendant violated.

A case in point is *People* v. *Knapp* (206 N. Y. 373, *supra*). In that case the defendant was charged with a violation of section 297 of the Penal Law, which provided that " Every director of a money corporation who: * * * 2. wilfully does any act as such director which is expressly forbidden by law, or wilfully omits to perform any duty imposed upon him as such director by law, is guilty of a misdemeanor * * *." The indictment there contained four counts, the first of which alleged that the defendant as such director omitted, neglected and refused to honestly and diligently administer the affairs of the Binghamton Trust Company in that he permitted and procured it to lend, without lawful consideration and without sufficient collateral, its money to the defendant and his associates. Under the second, third and fourth counts of the indictment, he was charged with a violation of section 297 of the Penal Law in that he violated that section of the Banking Law which prohibited a bank or trust company from making any loans in an amount in excess of one-tenth part of its capital stock actually paid in and surplus, except in cities having a population of 1,800,000 or over, and then only upon specified collateral.

The court there sustained the demurrer to the first count, and held that (p. 380), " The wrong done was the failure to obey the common law while the wrong charged was the failure to obey some statute where no statute commanded obedience."

The court then pointed out the distinction between negligence for which a person is civilly liable and that for which he is criminally liable, and restated the general rules of interpretation and construction of Penal statutes (pp. 380–381) : " According to the Penal Law no act or omission is a crime except as prescribed by statute. (Penal Law, § 22; Penal Code, § 2.) There is no longer any common-law crime in this State. The bare neglect of a legal duty is not a crime unless some statute so prescribes, although if such negligence caused special injury to an individual he would have his common-law action for the recovery of damages. Formerly whenever a legal duty of a public nature was imposed either by statute or common law a neglect of that duty was indictable, but this has not been the law, except where specially prescribed by statute, since the enactment of section 22 of the Penal Code. Where any duty is enjoined by law upon any public officer, a wilful omission to perform such duty is punishable as a misdemeanor, unless made punishable otherwise by some special provision of statute. (Penal Law, § 1857; Penal Code, § 154.) The defendant, however, was not a public officer and was not indicted for neglect

of duty as such. The count under consideration was for neglect of duty as director of a trust company and there is no statute making such neglect a crime.''

The fundamental principles that the legislative intent to create a crime must be clear and concise will bear repetition here.

'' The intent of the legislature to elevate an act to the importance of a crime, cannot be imputed by loose inferences, and doubtful implications, but must be made to appear with reasonable certainty. We may guess that the legislature intended to make all prohibited acts, criminal offences, but it is impossible to so affirm with any degree of certainty, and the fact that they did not so declare, is indicative that they did not so intend.'' (*People* v. *Hislop,* 77 N. Y. 331, 335.)

Laws which create crimes ought to be so explicit either in themselves or by reference to some other standard that all men subject to their penalties may know what acts it is their duty to avoid (*Sherwin* v. *People,* 100 N. Y. 351). A criminal statute should be construed narrowly that acts, otherwise innocent and lawful, do not become crimes unless there is a clear and positive expression of the legislative intent to make them criminal (*People* v. *Shakun,* 251 N. Y. 107).

It is significant that the Legislature, in 1922 (L. 1922, ch. 641), saw fit to enact subdivision 6 of section 760-a of the Penal Law, which provides that any person who, '' Being a signer of a petition, provided for in the election law, for the designation or nomination of a candidate, thereby makes a false statement * * * Is guilty of a misdemeanor '', but did not enact a similar provision for subscribing witnesses. Apparently and up until recently, the Legislature either did not forsee such abuses by subscribing witnesses or was satisfied with the resultant consequences of the voidance of such petitions by the courts.

It is also significant that the Joint Legislative Committee to Revise and Recodify the Election Law of the State of New York, of which Senator Charles O. Burney, Jr., is chairman, in its very exhaustive and comprehensive report to the Legislature on March 1, 1946, recommended numerous changes and amendments to the Election Law, the County Law, the Public Officers Law, the Civil Practice Act and the Penal Law (N. Y. Legis. Doc., 1946, No. 50).

Among these, was an amendment to section 760-a of the Penal Law, now chapter 346 of the Laws of 1946, whereby a new subdivision '' 7 '' was added [eff. April 1, 1946] which provides that it shall be a misdemeanor for a subscribing witness to a

petition to make a false statement or a false affidavit on such petition. In recommending this new subdivision, the Joint Legislative Committee said (p. 37): " There is no provision at the present time in the law which makes punishable the making of a false statement by a subscribing witness, and the result has been that there have been wholesale fraudulent petitions by subscribing witnesses. It is believed that the enactment of this law will substantially reduce this unlawful practice."

I do not mean to imply that such abuses of or fraudulent practices under the Election Law are to be condoned, but the courts are called upon to interpret and enforce the laws as enacted by the Legislature and not to legislate. The Burney Committee is to be commended for sponsoring this new subdivision 7 of section 760-a of the Penal Law, which, as the Joint Legislative Committee said, will in the future substantially reduce this unlawful practice.

An attempt to hold this defendant under the new law (subd. 7) would be *ex post facto*.

For the foregoing reasons my conclusion is that an untrue or false *but unsworn* statement by a subscribing witness to a designating or nominating petition was not a violation of the Election Law within the meaning of section 783 of the Penal Law and the indictment is therefore dismissed.

The District Attorney, however, has called my attention to the fact that he may have other evidence which may show that this defendant committed some other crime. The District Attorney is therefore authorized to resubmit this case to the present or next Grand Jury, and there present such evidence as he may have.