*533 OPINION OF THE COURT
Per Curiam.
These proceedings, like others before us today, involve minor discrepancies between the numbers of signatures indicated on cover sheets and the actual numbers of signatures contained in the designating petitions themselves. Each of the three candidates seeks a place on the New York City Democratic primary ballot for the public office of council member from his or her respective district. The designating petition of Lewis A. Fidler contains either 4,659 or 4,660 signatures, which his cover sheets overstated as 4,669. Nydia M. Velazquez’s designating petition contains 2,420 signatures, overstated on her cover sheet by four. Susan D. Alter’s designating petition contains 4,643 signatures, which her cover sheets understate by three. In each case, a place on the primary ballot requires 1,500 valid signatures.
Upon cross applications to validate and invalidate, Special Term found the cover sheet overstatements in the designating petitions of Fidler and Velazquez inconsequential violations of Election Law § 6-134 (2).[1] Nonetheless, interpreting our decision in Matter of Hargett v Jefferson (63 NY2d 696) to require “ ‘strict’ compliance” in every case of cover sheet overstatements, the court “most reluctantly” granted the applications to invalidate and denied the applications to validate in the Fidler and Velazquez proceedings. In the Alter proceeding, the court denied the application to invalidate and granted the application to validate, reading our decision in Matter of Jonas v Black (63 NY2d 685, affg 104 AD2d 466) as requiring only “ ‘substantial’ compliance” in cases of cover sheet understatements.
The Appellate Division modified, on the law and the facts, by reversing Special Term’s determinations in Fidler and Velazquez, granting their applications to validate, denying the applications to invalidate and ordering that their names be placed on the appropriate ballots.[2] It expressed the view, in which we concur, that “Matter of Hargett v Jefferson (supra) has *534 been misconstrued by those who rely upon it to attack designating petitions where the overstatement or understatement of the numbers of signatures is extremely minor”, and that Hargett was not intended to abrogate the doctrine that the law will not bother with trifles. This is so, even within the context of the heightened scrutiny with which courts must determine compliance with the technical requirements of the Election Law.
This is not to say that all cover sheet discrepancies may be ignored. Broad policy considerations weigh in favor of requiring strict compliance with the Election Law in these cases. One of the purposes of the statutory requirements is to facilitate the discovery of fraud and irregularity in designating petitions (Matter of Rutter v Coveney, 38 NY2d 993, 994). Overstatements of the number of signatures in designating petitions may deter potential challengers, who believe they could more profitably spend their time and energy challenging designating petitions whose cover sheets indicate a number of signatures closer to the required minimum. Conversely, understatements, especially substantial ones, could attract challenges which would otherwise be deemed unwarranted and a waste of judicial and other resources when they are most in demand. Another benefit of strict construction of the Election Law is that it reduces the likelihood of unequal enforcement (Matter of Carr v State Bd. of Elections, 40 NY2d 556, 558). Both the actual operation and public perception of the electoral process as one that seeks regularity and evenhanded application must not be distorted. The Election Law must have a neutral application unaffected by party affiliation, policy, position, incumbency, race, sex, or any other criterion irrelevant to a determination of whether its requirements have been met. In short, a too-liberal construction of the Election Law has the potential for inviting mischief on the part of candidates, or their supporters or aides, or worse still, manipulations of the entire election process.
On the other hand, a strictness of construction beyond that necessary for the effectuation of those policies can also lead to injustice (Matter of Carr v State Bd. of Elections, supra, at p 559). We implicitly recognized this in Matter of Jonas v Black (supra), where an inconsequential understatement was not fatal to the validity of the designating petition. We did not hold to the contrary in Matter of Hargett v Jefferson (supra), which involved overstatements that were substantial by any estimate (one cover sheet claimed 5,074 signatures though the designating petition to which it related only contained 3,831; the other claimed 3,325 though its designating petition contained 2,083).
*535 Even though laboring under the severe time constraints of election cases, of which we are painfully aware (see, Matter of Reiter v Black, 63 NY2d 689), it should be apparent from a reading of our precedents, informed by the underlying policies they are intended to serve, that there is room for judicious decision-making within the confines marked by Matter of Hargett v Jefferson (supra), and Matter of Jonas v Black (supra), without offending the policy of stare decisis. As this court announced many years ago, “No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence is to be taken as a rule of law separate from its association” (Dougherty v Equitable Life Assur. Socy., 266 NY 71, 88, rearg denied 266 NY 615).
In the present cases, we agree with the Appellate Division that the discrepancies in the designating petitions of all three candidates were inconsequential and did not implicate any of the underlying policy considerations discussed above, and no potential for fraud has been alleged or is apparent. Accordingly, we affirm its order.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye, Alexander and Titone concur in Per Curiam opinion.
In each case: Order, insofar as appealed from, affirmed, without costs.

. Election Law § 6-134 (2) provides in pertinent part: “There shall be a cover sheet attached to each petition consisting of ten or more sheets and each volume thereof. Each cover sheet shall indicate *** the total number of signatures contained in such petition. If the petition is filed in two or more volumes, the cover sheet for each volume shall also contain the following additional information: * * * the total number of signatures contained in the volume”.

. That court affirmed the determination in Matter of Garrett v Alter, and the appeal is here by our leave (65 NY2d 607).